In re ZODIAC ENTERPRISES, INC.
d/b/a Atlas Marine Services, Debtor.

In re ATLAS METAL
FABRICATORS, INC., Debtor.

ZODIAC ENTERPRISES, INC. d/b/a
Atlas Marine Services, Plaintiff,

v.

Farouk KAMAREDDINE, Defendant.

Bankruptcy Nos. 87–03256–BKC–SMW,
87–03258–BKC–SMW.
Adv. No. 87–0633–BKC–SMW–A.

United States Bankruptcy Court,
S.D. Florida.

April 12, 1988.

Robert A. Mark, Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., and Joseph Matthews, Murai Wald Biondo Matthews & Moreno, Special Counsel, Miami, Fla., for debtor/plaintiff.

Arthur Weitzner, Weitzner & Russo, P.A., Miami, Fla., Lee Mandell, Hall & Swann, Coral Gables, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on before the Court for trial upon the Objection To Proof Of Claim filed by the debtor Zodiac Enterprises, Inc. (the "debtor") objecting to the proof of claim filed in this chapter 11 proceeding by Farouk Kamareddine ("Kamareddine"). The adversary proceeding instituted by the debtor included a counterclaim against Kamareddine. By Order dated February 2, 1988, this Court granted Kamareddine's motion to abstain as to the counterclaim asserted by the debtor and denied the motion to abstain as to the debtor's objection to claim.

The Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law.

■ This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. The objection to claim is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Moreover, pursuant to Bankruptcy Rules 3007 and 7001, this matter was properly brought as an adversary proceeding since, prior to the partial abstention order, the debtor in-

cluded a counterclaim with its objection to claim.

The Court's adjudication of this adversary proceeding constitutes a judgment on the merits of Kamareddine's claim. The Court rejects Kamareddine's contention that this is an "estimation" proceeding under Section 502(c) of the Bankruptcy Code. Kamareddine's claim will be disallowed in its entirety for all purposes in these chapter 11 proceedings.

■ Kamareddine's proof of claim in the amount of $450,000.00 is based upon the alleged value of the claimant's interest in Atlas Marine Services, Inc. ("Atlas Marine" or "Company"), a corporation which was merged into the debtor corporation in February 1986.

The growth and development of Atlas Marine and the events leading up to the February 1986 merger are largely undisputed. Atlas Marine was founded in 1982 by Kamareddine, and two others, including Michael Cassaras ("Cassaras"), the present sole shareholder of the successor corporation Zodiac. Each shareholder contributed $2,500.00 in capital. The business was primarily engaged in engine room and galley repair on cruise ships and the brokering of stainless steel work. The evidence presented at trial reflected gross sales of approximately $500,000.00 in 1983 and $1.2 million in 1984.

During 1984, the principals of the Company considered creating a subsidiary company to engage in metal fabrication. Kamareddine initially expressed concerns about starting the fabrication shop but he joined in the decision to proceed. Kamareddine co-signed a $120,000.00 loan obtained from AmeriFirst Savings and Loan Association in January 1985 to finance the acquisition of equipment for the shop and joined with Cassaras in the decision to lease a larger facility to accommodate the new operation.

In early 1985, a conflict arose between Kamareddine and Cassaras. In a written list of demands presented by Kamareddine to Cassaras in or about March 1985, Kamareddine asserted he was the most valuable person in the business and should be

given the authority to run the Company. Cassaras attempted unsuccessfully to resolve the conflict, recognizing that Kamareddine's presence was critical to the successful continuation of the Company's cruise ship business. In April 1985, Kamareddine resigned from the Company effective in early May.

After Kamareddine resigned, there were several months marked by a significant loss of business and a major conflict between the Company and Kamareddine. Kamareddine immediately began performing project work for one of Atlas Marine's most important prior accounts, and the Company's sales dropped considerably.

After Kamareddine's resignation, the Company attempted to raise capital and resolve the continuing disputes with Kamareddine by agreeing upon a buy-out price for his interest. Finally, unable to obtain capital or to resolve the ongoing dispute with Kamareddine, the Company entered into a merger transaction in which Atlas Marine was merged into the debtor.

The debtor was formed in 1985 by Cassaras, and two others. Until the merger in February 1986, the debtor was primarily engaged in the business of ships' chandlery. The merger with the debtor was effected for business reasons which included providing a vehicle for valuing Kamareddine's interest.

The merger was accomplished on February 11, 1986, when Atlas Marine's shareholders and directors passed resolutions approving the plan of merger. Immediately thereafter, on February 14, 1986, the Company notified Kamareddine of the merger and offered to purchase his shares of Atlas Marine for the sum of $5,000.00. This amount represented twice Kamareddine's original $2,500.00 capital contribution when the Company was formed. Kamareddine rejected the offer and filed a lawsuit in the state court against the Company and two individuals.

The issue presented at trial was the value of Kamareddine's shares in Atlas Marine at the time of the merger since, under Section 607.247, Florida Statutes, Kamareddine was entitled to receive the value of his shares at that time. To determine the value of Kamareddine's one-third stock interest in Atlas Marine, the Court must: (i) determine the fair value of the stock as of the day prior to the date on which the vote was effected approving the plan of merger; and (ii) must exclude any appreciation or depreciation in anticipation of the merger. Fla.Stat. § 607.247 (1987). The parties agree that the valuation date is February 11, 1986.

The Court finds that Kamareddine's interest in Atlas Marine was worthless at the time of the merger in February 1986. The Company had a negative net worth of approximately $112,000.00 when the merger occurred and losses of $140,000.00 in the prior twelve months.

Kamareddine was a principal participant in Atlas Marine's business and a major source of the Company's primary business with the Royal Caribbean ("RCCL") and the Norwegian Caribbean ("NCL") cruise lines. Evidence introduced at trial establishing Kamareddine's importance to the Company included Kamareddine's demand letter in March 1985 and the admissions in Kamareddine's deposition testimony. Although Kamareddine attempted at trial to minimize his role in the Company to reduce the impact of his departure, Mr. Cassaras' testimony was the more credible testimony on this issue. Kamareddine was a key man in the business and his departure had a negative impact on the value of the Company.

For the purposes of adjudicating the debtor's objection to claim, this Court does not assume any wrongdoing by Kamareddine in taking business with him when he left the Company. That issue will be decided by the state court if the debtor prosecutes its counterclaim. However, Kamareddine's departure precipitated a sharp decline in the Company's sales and business which significantly reduced the value of the Company between May 1985 when Kamareddine departed, and February 1986, the valuation date for this proceeding.

Whether or not Kamareddine acted improperly in taking substantial business with him when he left the Company, it is

clear that Kamareddine's new business benefited and the Company suffered. In the nine months between Kamareddine's departure in May 1985 and the merger in February 1986, Kamareddine's new business, World Marine Services, Inc., enjoyed gross sales of more than $335,000.00 to the two companies, NCL and RCCL, which had previously represented 90% of Atlas Marine's business. The Court must consider the decline in Atlas Marine's business in valuing Kamareddine's one-third interest at the time of the merger. Florida law entitles Kamareddine to the fair value of his interest at the time of the merger. The determination of that value must include the significant financial impact that his departure had on the Company.

In financial statements signed by both Cassaras and Kamareddine, the Company was valued at $300,000.00 in December of 1984. Based upon the losses incurred as a result of the start-up costs and operation of the metal fabrication business by the newly formed subsidiary, Atlas Metal Fabricators, Inc. ("Atlas Metal"), and based upon the losses occasioned as a result of Kamareddine's departure from the business in May 1985, the $300,000.00 valuation placed on the Company in December 1984 represented the value of the Company at the most successful point in its history.

The fact that Mr. Kamareddine valued his one-third interest at only $100,000.00 when the Company was at its peak is significant evidence of the inflated value placed upon the one-third interest in February 1986 by Kamareddine and his expert after the Company had experienced losses in its fabrication business and losses as a result of Kamareddine's departure.

The debtor's expert, Dr. Earl Foster, presented testimony that was well reasoned and persuasive. Dr. Foster carefully examined the financial condition of the Company, both prior to and including February 11, 1986 and employed well accepted methods for valuing businesses in reaching his conclusion.

Dr. Foster's analysis established the negative book value of the Company as of the date of the merger and the absence of any value based on other recognized, objective valuation methods. Under any objective measure based upon the financial status of the Company, a one-third minority interest in the business as of February 1986 was worthless.

■ By contrast, Kamareddine's expert, Ken McKenzie, lacked credibility. Since it was impossible to conclude that Kamareddine's stock had significant value based upon the financial statements, McKenzie rejected the financial statements and assumed hypothetical sales and profit levels for 1985 and 1986 in reaching his conclusion. McKenzie's assumptions bore no resemblance to the actual financial condition of the Company.

Under these circumstances, a Court may reject expert testimony and opinion. *See In re Aircrash Disaster at New Orleans, Louisiana,* 795 F.2d 1230 (5th Cir.1986). In that case, the Fifth Circuit reversed a jury verdict where it found "the assumptions of plaintiffs' economist so abusive of the known facts, and so removed from any area of demonstrated expertise, as to provide no reasonable basis [for the damage calculation]." 795 F.2d at 1235. Mr. McKenzie's opinions here are similarly abusive of the known facts. The Court finds a $450,000.00 valuation for a minority interest in an insolvent company is not credible.

In his trial testimony Kamareddine's accountant, Steve Mountain, criticized the financial statements used by the debtor's expert but Kamareddine offered no evidence of significant assets or income which were not reflected in the statements. The financial statements presented a fair picture of the Company's financial situation during the periods critical to this analysis.

■ The Court finds that the debtor sufficiently demonstrated the factual predicate for introducing the financial statements into evidence over Kamareddine's hearsay objection. The statements were prepared in the normal course of the debtor's business by Charles Gomes, a certified public accountant, based upon information recorded in the normal course of business by personnel of the Company under the super-

**878**

vision of Mr. Cassaras. Kamareddine failed to demonstrate that "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Rule 803(6) *Fed.R.Evid.*

In sum, the debtor properly commenced this adversary proceeding to adjudicate the validity of a $450,000 claim. The Court finds that the claimant's one-third interest in the Company in February 1986 had no value. Accordingly, the debtor's objection is sustained and the claim disallowed in its entirety.

A separate Final Judgment of even date has been entered in conformity herewith.